Pretrial Declaration
(rev. 10/23)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK



U.S. DISTRICT COURT – N.D. OF N.Y.

**FILED**

**Jun 17 - 2026**

John M. Domurad, Clerk

**UNITED STATES OF AMERICA**

**vs.**

Stacey Taylor

**DECLARATION**
**Docket: 0206 8:25CR00393-001**
**Summons Requested**

Honorable Paul J. Evangelista U.S. Magistrate Judge
NORTHERN DISTRICT OF NEW YORK

Shane Avery declares that he is a Senior United States Probation Officer and that:

On December 1, 2025, Stacey Taylor appeared before U.S. Magistrate Judge Paul J. Evangelista for an initial appearance following her arrest for Conspiracy to Commit Alien Smuggling and Alien Smuggling. Taylor was ordered detained pending a detention hearing scheduled for December 3, 2025; that hearing was adjourned at request of defense counsel. On January 21, 2026, Taylor appeared before the Court for a detention hearing and she was ordered released upon admittance into inpatient substance abuse treatment, with pretrial release conditions including electronic monitoring with curfew following her successful completion of treatment. On January 27, 2026, Taylor was released from jail and entered inpatient at St. Joseph's Addiction Treatment and Recovery Center (SJATRC).

A Jury Trial is scheduled for July 27, 2026, before U.S. District Judge Elizabeth C. Coombe.

During Taylor's participating at SJATRC, she was subject to a social responsibility intervention for bringing food into her room; a discharge prevention plan for continuing to bring food into her room and lack of honesty when questioned about it; a treatment completion contract for instigating discord among her peers and an unwillingness to accept accountability (she denied bringing food into her room until confronted with video evidence); and a placement on male restriction for two weeks due to speaking with a male peer (which violated SJATRC's non-fraternization policy). On April 27, 2026, Taylor successfully completed inpatient treatment with more than half her goals met and a recommendation that she reside in a sober living facility.

As arranged by SJATRC and agreed upon by Taylor, upon her discharge Taylor moved into Changed By Christ (a transitional living program for women located in Plattsburgh, New York). On that date, she reported to the Plattsburgh U.S. Probation Office for the installation of the location monitoring equipment; she was placed on a curfew of 9:00 p.m. to 6:00 a.m. (Changed by Christ has a curfew for all residents which of 9:00 p.m to 6:00 a.m.). Following her discharge, she began an outpatient substance abuse treatment assessment through Champlain Valley Family Center (CVFC). Taylor had been referred to mental health treatment at North Country Behavioral Medicine but they advised that she needed a different level of care, so Taylor intended to receive mental health services through CVFC as well.

On May 7, 2026, Taylor demonstrated noncompliance with her curfew by entering her residence at 9:20 p.m. When contacted by a location monitoring officer the following day, she advised that she had been at bingo and returned to her residence when she realized that she was out beyond her curfew.

On May 19, 2026, Taylor reported to the probation office and was admonished and reinstructed for her failure to follow Changed by Christ's program rules on two separate occasions (Taylor admitted that she allowed her husband on the premises without prior authorization and that she had smoked cigarettes in a bathroom). On that date, Taylor advised this office that as CVFC could not provide dual services, she had an appointment scheduled the following week at Behavioral Health Services North for mental health treatment.

On May 24, 2026, Taylor demonstrated noncompliance with her curfew by leaving her residence at 8:59 p.m. and entering her residence at 9:25 p.m. When contacted by a location monitoring officer on May 26, 2026, she said she had made a brief trip to a convenience store to purchase personal care items because there were none at the residence.

On May 28, 2026, Taylor reported to the probation office for a random drug test and admitted prior to submitting a sample for testing that she took two hits of crack cocaine on May 24, 2026. Taylor said she was offered crack from a person who offered her a ride home from an N.A. meeting; she took two hits and instantly regretted her use. Taylor alleged that this was an isolated incident and she agreed to advise her counselor at her treatment appointment that afternoon. She was admonished for her use and counseled regarding using the coping skills she learned while at inpatient treatment as well as her engagement in outpatient treatment.

On Friday, May 29, 2026, the executive director at Changed By Christ informed this office that Taylor's bed was searched earlier that day due to a report that Taylor may have been hiding something in her bed. When searched, a crack pipe, torch, spoon, and cotton were found under Taylor's bed sheet. This office called Taylor and instructed her to report to the office. Taylor informed this office that on May 24, 2026, the person with whom she used crack had given Taylor a pipe and torch in case she was able to "get some" in the future. Taylor said she planned to smoke more but then began feeling guilty about her relapse; she added that she did not know how to get rid of the pipe and torch. She said the spoon was in her bed because she had been eating cheesecake; she could not explain why a cotton ball was found in her bed with the other items. Taylor was admonished by this office for bringing drug paraphernalia into the facility and violating program rules. At the time of the conversation, this office had been advised that Taylor would be able to remain at Changed by Christ; the executive director later advised that due to safety concerns, Taylor would be removed from the program and be transported to CVFC's Intensive Crisis Stabilization Center in Plattsburgh for the weekend.

On Monday, June 1, 2026, Taylor remained at the CVFC Crisis Center while staff developed a plan for housing. The next day, this office learned that Taylor was accepted into the Adult Crisis Residence (a voluntary program operated by BHSN for individuals suffering from mental health concerns which is staffed 24/7 and provides daily programming) for 28 days. This office spoke with Taylor prior to approving the change of residence and she explained that she was struggling

with depression and anxiety surrounding her inability to grieve properly from the loss of her stillborn son four years ago. Taylor stated since her release, she had not met with a mental health clinician and the Crisis Center had been able to schedule an assessment for her at Clinton County Mental Health on June 3, 2026. Lastly, Taylor reported she was able to obtain new mental health medications from the Crisis Center to stabilize her symptoms of depression and anxiety (she was prescribed mental health medication, but these were adjusted while at the Crisis Center). This office confirmed with Changed by Christ that following her completion of the 28 day program at BHSN (without any incidents), Taylor could return to Changed By Christ.

On Thursday, June 4, 2026, this office notified the Court of Taylor's noncompliance to date and no action was requested.

On Friday, June 5, 2026, at approximately 11:30 p.m., Taylor called the location monitoring program's afterhours line to report that she had been discharged from the BHSN Adult Crisis Residence. Taylor said she was not aware that she had to attend four groups a day at the residence and she had instead spent the day with her husband. She was admonished for failing to comply with the program, as she had been at the residence several days and should be aware of the expectations. This office verified that the defendant was back at CVFC's Crisis Center (where she had spent the prior weekend) and that facility confirmed that she could remain there through the weekend. Taylor was directed to comply with the Crisis Center's rules and report to the U.S. Probation Office on Monday.

On Monday, June 8, 2026, this office confirmed with the CVFC Crisis Center that the defendant had been there over the weekend (she was allowed to leave during the day, as the program was voluntary. She was there all day Saturday and out most of the day on Sunday). This office called Taylor and directed her to report to the office that day, after her mental health appointment and after going to D.S.S. to secure emergency housing. This office confirmed with Changed by Christ that day that Taylor could not return to that sober living facility.

Later that day, Taylor reported as directed. She advised that as D.S.S. had numerous individuals needing housing, she would need to call after 4:30 p.m. for placement. She was asked about her discharge from BHSN's Adult Crisis Residence and Taylor said she had signed out on Friday at 7:40 a.m. with a return of 9:00 p.m., in order to spend the day with her husband, as they had not spent the day together in two weeks because he had been working every day. She said the program called her phone at about 1:00 p.m. that day but she hadn't heard it; they called her husband's phone, and Taylor was informed that if she did not attend groups, she would need to speak with a counselor. Taylor said when she returned to the residence at 9:00 p.m. they informed her that as she did not attend 4 groups that day, she was not in need of services and therefore being discharged. Taylor said that when she signed out for the day that morning, no one told her that if she missed 4 groups in a day, she was going to be discharged because she was considered stable. Taylor was admonished by this office for failing to attend groups at the residence, as she had cited just several days earlier that she needed additional services and a stable residence to address her mental health and substance abuse needs. This office reminded her that the housing was not a motel; Taylor asserted that the residence encourages people to use their support system and as her husband is her support system but he works frequently, she opted to spend the day with her husband.

That night, Taylor left this office a message that she stayed again at the Crisis Center and would be going to D.S.S. at 8:00a.m. the following day and should be placed at a shelter. On June 9, 2026, she called this office to report that she was placed at the Anchorage Motor Inn in Rouses Point.

On June 10, 2026, a home visit was conducted with Taylor at her residence and she confirmed she would be placed there for at least one week. Taylor was advised that as she was no longer living at Changed By Christ, her curfew would be reduced to require her to be in her residence at from 7:00 p.m. to 7:00 a.m. This office reminded Taylor that while at St. Joseph's she had failed to comply with all program rules, then failed to comply while at Changed by Christ, and then failed to comply at the Adult Crisis Residence, leaving her now to reside in temporary housing versus the sober living/controlled environment recommended for her. She was counseled regarding maintaining compliance and sobriety moving forward.

This office thereafter spoke with staff from Adult Crisis Residence regarding the events leading to Taylor's discharge. This office was informed that prior to Friday, June 5, 2026, Taylor had signed out for the duration of most of the days (she had been admitted on Tuesday and discharged on Friday night). There are three groups a day at the residence, although clients can be excused from attending group(s) if they have outpatient treatment appointments. On June 5, 2026, the defendant signed out of the residence at 7:30 a.m. with an expected return time of 9:00 p.m. She told the staff member that she had appointments scattered throughout the day and since her husband was off, she was going to spend the time in between her appointments with her husband instead of coming back to the residence. She informed the member that the clinical team had approved this (they did not). At approximately 12:00 p.m., a staff member attempted to contact Taylor via her listed phone number; calls went directly to voicemail and a message was left requesting Taylor contact the residence regarding appointments and to obtain documentation verifying her attendance at the alleged appointments. Two additional calls were made at 15-minute intervals with no response. Staff then contacted the listed emergency contact (the defendant's husband) and Taylor answered, identified herself, and reported planning to miss all groups that day for transportation convenience. The defendant stated she had previously informed a clinician of this plan but staff noted the clinician had not been informed. At a clinician request, the staff instructed Taylor to obtain appointment notes to verify her attendance; Taylor was also informed that failure to participate in groups could result in discharge and that a discussion with clinical and administrative staff would be required upon her return. The defendant was receptive to this. That evening, at approximately 9:05 p.m. the defendant returned to the residence without documentation or proof verifying attendance at numerous appointments (which were required in order to validate her reported reason for missing all groups for the day). Support staff notified the defendant of the plan to discharge due to incompliance of group attendance without verification of necessary medical/therapeutic appointments. From approximately 9:35 PM to 9:45 PM, two staff members met with the defendant to review the circumstances of the extended absence and discharge. Taylor reportedly presented as tearful, upset, and emotionally reactive. The defendant stated she was unaware discharge could occur for missing groups and reported not understanding that groups were mandatory. The program expectations were reviewed, including the mandatory group attendance that was explained at intake, and clarified that absences may be excused for verified appointments

when appropriately communicated. The defendant reported having multiple appointments but was unable to provide documentation at that time. The defendant then abruptly ended the discussion and began packing her belongings. Her medications were counted with staff present and she declined further assessments. At approximately 10:15 p.m., staff transported the defendant to CVFC's Crisis Center for emergency housing.

Although Taylor attends her outpatient substance abuse and mental health treatment appointments, her failures to comply with her curfew, her use of cocaine, and her failure to abide by basic rules at various residential programs is of significant concern to this office. Rather than put forth sincere effort with programs, she has been manipulative and/or dishonest with each program: at St. Joe's about bringing food into her room, only admitting it due to video evidence; at Changed by Christ, when hiding drug paraphernalia in her bed; and at BHSN's Adult Residence, when she claimed she was attending appointments in the community on June 5, 2026, when she apparently had no appointments scheduled. This office requests a summons be issued and that the Court consider remanding the defendant pending trial.

| Condition Number | Nature of Noncompliance |
|---|---|
| 7(q) | **Refrain from possession, use, distribution, importation, or manufacture of any and all controlled substances and any and all controlled substance analogues, as defined in 21 U.S.C. § 802, except that possession and use of a controlled substance properly prescribed by a licensed medical practitioner is permitted.**<br><br>On May 28, 2026, Taylor admitted to the U.S. Probation Office that she had used crack cocaine on May 24, 2026.<br><br>*This information is based on knowledge of the probation officer and drug testing paperwork.* |
| 7(u)(i) | **Participate in one of the following monitoring or location restriction programs and abide by all the requirements of the program. The defendant must pay all or part of the cost of the program as determined by Pretrial Services based upon ability to pay. (i) Curfew. The defendant is restricted to the defendant's residence: As directed by Pretrial Services or the Court.**<br><br>On May 7, 2026, Taylor was required to be in her residence at 9:00 p.m. On that date, Taylor entered her residence at 9:20 p.m.<br><br>On May 24, 2026, Taylor was required to be in her residence at 9:00 p.m. On that date, Taylor left her residence at 8:59 p.m. and entered her residence at 9:25 p.m.<br><br>*This information is based on knowledge of the probation officer.* |
| sc(9) | **Upon release from custody, immediately enter inpatient treatment at St. Joseph's Addition Treatment & Recovery Center and remain at such facility** |

**until successfully discharged. The defendant shall comply with the rules of the facility and any aftercare recommendations, which may include residing in a sober living facility.**

On February 18, 2026, Taylor was placed on a social responsibility intervention at St. Joseph's Addiction Treatment and Recovery Center after bringing food into her room, in violation of program rules.

On March 13, 2026, Taylor was placed on a discharge prevention plan at St. Joseph's Addiction Treatment and Recovery Center after again bringing food into her room and for being dishonest when asked by staff.

On April 9, 2026, Taylor was placed on a treatment completion contract for instigating discord among her peers and demonstrating an unwillingness to accept accountability. Additionally, Taylor had been placed on a male restriction for two weeks after speaking to a male peer, in violation of St. Joseph's non-fraternization policy.

On May 29, 2026, Taylor was discharged from Changed by Christ due to failures to follow the rules of the facility.

On June 5, 2026, Taylor was discharged from the Adult Crisis Residence after failing to follow program rules.

*This information is based on knowledge of the probation officer and St. Joseph's discharge summary.*

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Approved by:                                                    Submitted by:

Jennifer Belli
Supervisory U.S. Probation Officer

Shane D. Avery
U.S. Probation Officer

## THE COURT ORDERS

☐ No Action
☒ The Issuance of a Summons
☐ Other
☐ The Issuance of a Warrant. This petition and all documents attached hereto are SEALED until such time as the warrant generated by this petition is returned executed.

The District Court Clerk's Office is hereby ORDERED <u>NOT</u> to serve a copy of this petition or any of the attached documents upon anyone EXCEPT that a copy is to be served upon law enforcement personnel. Copies shall be served upon on the unsealing of the petition.

_____     ___6/17/2026_____
Honorable Paul J. Evangelista                Date
U.S. Magistrate Judge